UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**UNITED FOOD AND COMMERCIAL**
**WORKERS UNION, LOCAL 73A,**
**AFL-CIO & CLC,**

                Plaintiff,

                Case No. 05-C-0157

    -vs-

**HORMEL FOODS CORPORATION,**

                Defendant.

## DECISION AND ORDER

The plaintiff, United Food and Commercial Workers Union, Local 73A ("Local 73A"), brought this action to enforce an arbitration award issued on February 13, 2004 against the defendant, Hormel Foods Corporation ("Hormel"). The parties have filed cross-motions for summary judgment. For the reasons that follow, Hormel's motion is granted, Local 73A's motion is denied, and this matter is dismissed in its entirety.

### BACKGROUND

UFCW Local 73A is a labor organization representing certain employees at Hormel, doing business in Beloit, Wisconsin. (Defendant's Proposed Findings of Fact ["DPFF"], ¶¶ 2-3). On May 12, 2000, Local 73A and Hormel executed a collective bargaining agreement (the CBA) covering all bargaining unit employees employed by Hormel at its Beloit facility. (DPFF, ¶ 6). The CBA provides a step-by-step grievance procedure and an option for the Union to refer the matter to arbitration. (DPFF, ¶ 8).

On or about October 28, 2002, Hormel unilaterally implemented production standards at its Beloit facility. (*Id.*, ¶ 9). On or about January 8, 2003, Local 73A filed a grievance over the unilaterally implemented production standards and disciplinary action that had been issued against certain employees as a result thereof. (*Id.*, ¶ 10). On October 22, 2003, an arbitration hearing was held before Labor Arbitrator Lamont E. Stallworth. (*Id.*, ¶ 11). The following issue was submitted by the parties:

> Whether or not the Company violated the Working Agreement by unilaterally promulgating minimum production standards, with discipline, and by disciplining its employees over their failure to meet the minimum production standard without giving the Union prior notice and an opportunity to bargain. If so, what shall the remedy be?

(*Id.*, ¶ 11).

On February 13, 2004, Arbitrator Stallworth issued a decision and award regarding the January 8, 2003 grievance filed by Local 73A. (*Id.*, ¶ 13). The Award stated:

> Based upon the facts and circumstances of the instant grievance, it is the opinion of the Arbitrator that the Company violated the Working Agreement by implementing production standards unilaterally at the Beloit, Wisconsin plant. Accordingly, the instant grievance must be sustained. The Company is instructed to cease and desist from applying qualitative or quantitative standards at its Beloit location, and make any affected employees whole.

(*Id.*, ¶ 14). On or about February 26, 2004, Hormel removed the application of the qualitative and quantitative standards and removed all discipline from employees who had been disciplined as a result of such standards. (*Id.*, ¶ 15). On or about February 26, 2004, Hormel wrote Local 73A, stating that it had made the affected employees whole. (*Id.*, ¶¶ 16-17).

On April 30, 2004, representatives of Hormel and Local 73A met for bargaining, and Hormel gave Local 73A the opportunity to discuss production standards. (*Id.*, ¶ 20). Local 73A decided it would not bargain over production standards and took the position that it had no duty to bargain over such standards until the CBA expired. (*Id.*, ¶ 20). On May 7, 2004, Hormel

-2-

Case 2:05-cv-00157-RTR   Filed 09/08/06   Page 2 of 6   Document 35

wrote Local 73A and offered to meet again to negotiate over production standards. (*Id.*, ¶ 21). After May 7, 2004, Hormel implemented production standards at its Beloit plant. (*Id.*, ¶ 22).

## DISCUSSION

Local 73A has brought this action "first to confirm [Arbitrator Stallworth's] award, then to enforce it." (Local 73A's Brief in Support of Motion for Summary Judgment [Docket # 15] at 5). Hormel does not dispute the validity of Arbitrator Stallworth's award. Rather, Hormel argues that the Award does not apply prospectively to its May, 2004 implementation of production standards. According to Hormel, it already complied with the award by removing its production standards in February 2004 and making the affected employees whole, leaving nothing to enforce under the award.

Courts generally decline to prospectively enforce an arbitration award in a subsequent, similar dispute. To do so "would usurp the function of the arbitrator and violate the rule that awards may be enforced only as written." *Oil, Chemical & Atomic Workers Int'l Union, Local 4-367 v. Rohm & Haas, Texas, Inc.*, 677 F.2d 492, 494 (5th Cir. 1982) (per curiam). In fact, there is "solid, well-reasoned case law holding that the preclusive effect of a prior arbitral award is itself a question for arbitration." *Little Six Corp. v. United Mine Workers, Local Union No. 8332*, 701 F.2d 26, 29 (4th Cir. 1983); *see also United Electrical Workers v. Honeywell*, 522 F.2d 1221, 1225 (7th Cir. 1975) (refusing to relieve a union of its duty to arbitrate violations that were arguably similar to those found in a prior award).

In *Local 1545, United Mine Workers of America v. Inland Steel Co.*, 876 F.2d 1288 (7th Cir. 1989), the court declined to prospectively enforce two arbitral awards. The awards did not include language indicating that they applied to "like violations," a "strong indicat[ion] that the arbitrators did not want the awards to apply prospectively." *Inland Steel*, 876 F.2d at 1295. Furthermore, language in the applicable CBA stated that the "arbitrator's decision shall be final

and shall govern *only the dispute before him.*" *Id.* (emphasis added).  Finally, even though the facts alleged in the arbitration proceedings were "substantially identical" to the new dispute, the defendant's conduct did not constitute "wilful and persistent disregard of the arbitration awards." *Id.* at 1296.  The Court concluded:

> Should the occasion arise when an employer defies such expectations and deliberately persists in conduct in clear violation of a prior arbitration award, which leaves a union without an appropriate remedy, we will have to face squarely the question of whether such circumstances may constitute an exception to the holding of the *Steelworkers* trilogy.  Such an occasion does not present itself on the facts of the instant case.  The union has not alleged sufficiently egregious facts which can allow us to supplant the arbitral process. . . .

*Id.* at 1297.[1]

In the instant case, Local 73A focuses on language in the award requiring Hormel to "cease and desist" from applying production standards.  This language does not state or imply that the arbitrator intended his award to have prospective effect.  In fact, the arbitrator expressly limited his award to the "facts and circumstances of the instant grievance."  (DPFF, ¶ 14). Furthermore, the applicable CBA states that "[i]n making a decision, the arbitrator shall be bound and governed by the provisions of this Agreement *and restricted in the award to its application to the facts presented which are involved in the grievance*."  (DPFF, ¶ 12) (emphasis added).  The arbitrator could not have given his award prospective application, even if he wanted to do so.

Most importantly, Hormel's conduct does not indicate a willful and persistent disregard of the arbitration award.  Even assuming that the award was meant to apply prospectively, the arbitrator held that Hormel previously violated the Working Agreement by implementing

---

[1] The Court did not "foreclose the possibility that a party could allege sufficient facts to avoid the arbitral process in a different situation."  *Local 145, United Mine Workers of America v. Inland Steel Co.*, 876 F.2d 1288, 1296 (7th Cir. 1989).  However, there are no Seventh Circuit cases which have prospectively enforced an arbitral award.  *See, e.g., AG Communications Systems Corp. v. Int'l Brotherhood of Electrical Workers, Local Union No. 21*, Case No. 03-C-9035, 2005 WL 731026, *10 n.7 (N.D. Ill. March 28, 2005) (plaintiff "has not pointed to any cases in which the Seventh Circuit has prospectively applied an arbitration award as a bar to future grievances").

production standards *unilaterally*. However, Local 73A declined Hormel's offer to bargain over its May 2004 implementation of production standards. (DPFF, ¶¶ 20-22). Therefore, it is undisputed that Hormel did not act unilaterally in its May 2004 establishment of production standards.[2] In any event, if this matter is grieved, as it should have been in the first instance, Local 73A is free to argue that the prior award has preclusive effect. *See, e.g., Local 103, Int'l Union of Elec., Radio & Mach. Workers v. RCA Corp.*, 516 F.2d 1336, 1341 (3d Cir. 1975) ("Open to the union, before the arbitrator, is the same contention it has presented to the courts, *i.e.*, that the 'same question or issue' was previously the 'subject of arbitration'"). Local 73A has at its disposal an appropriate remedial process. The Court will not act to thwart or subvert that process. *See Inland Steel*, 876 F.2d at 1293 (collecting cases emphasizing judicial deference to the arbitration process).[3]

---

[2] In the labor relations context, "unilaterally" means without notice and the opportunity to bargain over the change in working conditions. *See, e.g., Milwaukee Spring Division*, 268 NLRB 601 (1984) (Section 8(a)(5) of the NLRA prohibits changes to mandatory subjects of bargaining without first bargaining and reaching good faith impasse).

[3] Local 73A cites *Philadelphia Marine Trade Ass'n v. Int'l Longshoremen's Ass'n, Local 1291*, 365 F.2d 295 (3d Cir. 1966) for the proposition that a court can enforce an arbitral "cease and desist" order that has been confirmed by a court when the target party has re-embarked on its proscribed conduct. The court declines to follow this ruling, as it predates the controlling Seventh Circuit precedent discussed in this opinion. Nonetheless, the limited discussion of the facts in *Philadelphia Marine* leaves the Court guessing as to whether it is factually similar in any way to the case at bar. For instance, *Philadelphia Marine* does not indicate whether the CBA limited the arbitrator to the facts presented in the grievance or whether the arbitrator's award applied only to the facts and circumstances of the particular grievance before him.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Hormel's motion for summary judgment [Docket # 18] is **GRANTED**;

2. Local 73A's motion for summary judgment [Docket # 14] is **DENIED**; and

3. This matter is **DISMISSED** in its entirety.

Dated at Milwaukee, Wisconsin, this 8th day of September, 2006

**SO ORDERED,**

s/ Rudolph T. Randa
**HON. RUDOLPH T. RANDA
Chief Judge**